**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-2940-18T3

JOHN BOVERY,

     Plaintiff-Appellant,

v.

MONMOUTH COUNTY
PROSECUTOR'S OFFICE,
STATE OF NEW JERSEY,
PROSECUTOR CHRISTOPHER
GRAMICCIONI, ASSISTANT
PROSECUTOR CHRISTOPHER
MATTHEWS, ASSISTANT
PROSECUTOR CAREY HUFF
and SPECIAL DEPUTY
ATTORNEY GENERAL
DAVID FRITCH,

     Defendants-Respondents,

and

COUNTY OF MONMOUTH,

     Defendant.

Submitted March 31, 2020 – Decided September 16, 2020

Before Judges Accurso, Gilson and Rose.

On appeal from the Superior Court of New Jersey, Law Division, Monmouth County, Docket No. L-1095-18.

Ferrara Law Group, P.C., attorneys for appellant (Ralph P. Ferrara and Kevin J. Kotch, of counsel and on the briefs).

Gurbir S. Grewal, Attorney General, attorney for respondents (Jane C. Schuster, Assistant Attorney General, of counsel; Wendy Jennings, Deputy Attorney General, on the brief).

PER CURIAM

Plaintiff John Bovery appeals from a January 28, 2019 order dismissing his amended complaint against defendants Monmouth County Prosecutor's Office, County of Monmouth, State of New Jersey, Prosecutor Christopher Gramiccioni, Assistant Prosecutor Christopher Matthews, Assistant Prosecutor Carey Huff and Special Deputy Attorney General David Fritch, alleging violations of the New Jersey Civil Rights Act, N.J.S.A. 10:6-1 to -2, negligent supervision, malicious prosecution, abuse of process, and intentional infliction of emotional distress. Because we are satisfied plaintiff's amended complaint "states no basis for relief and discovery would not provide one," Rezem Family Assocs., LP v. Borough of Millstone, 423 N.J. Super. 103, 113 (App. Div. 2011), we affirm.

Bovery operated illegal sports pools in New Jersey for nearly two decades before the Monmouth County Prosecutor's Office seized just over $846,000 from his bank accounts and residence in 2010, followed by a civil forfeiture action, N.J.S.A. 2C:64-1, in which it proved the funds were derivative contraband from his illegal sports pools. We set forth the facts in our prior opinions, the first affirming the forfeiture, State v. Amboy Nat'l Bank, 447 N.J. Super. 142, 148 (App. Div.) (Amboy I), certif. denied, 228 N.J. 249 (2016), and the second affirming the trial court's denial of Bovery's motion to vacate the forfeiture judgment, State v. Amboy Nat'l Bank, No. A-0487-17 (App. Div. May 29, 2019) (Amboy II) (slip op. at 2), and do not repeat them here. Suffice it to note that we rejected Bovery's argument that the money seized "was not used in furtherance of unlawful activity because the pools did not constitute illegal gambling" and found his argument that the seizure "exemplifie[d] the potential for abuse in the forfeiture statute," so lacking in merit as to not warrant discussion in a written opinion, Rule 2:11-3(e)(1)(E). Amboy I, 447 N.J. Super. at 154.

When the prosecutor's office seized Bovery's funds in September 2010, he was arrested and charged with promoting gambling. His bail was set at $10,000, with a ten percent cash bond option and he was released when his

wife posted $1,000. Five months after the institution of the forfeiture action, Bovery was indicted by a grand jury for third-degree promotion of gambling, N.J.S.A. 2C:37-2 and N.J.S.A. 2C:2-6; and first-degree financial facilitation of a crime, N.J.S.A. 2C:21-25 and N.J.S.A. 2C:2-6. Id. at 153 n.6. He claims defendants brought the money laundering charges "simply to turn the screws on [him] and to get him to agree to the State's cash grab."

Bovery was again arrested, only this time bail was set at $250,000, cash only. Unable to post bail, Bovery spent twenty-five days in jail, until the prosecutor's office agreed to a ten percent bond option after Bovery filed a bail reduction motion. Bovery claims defendants pursued the high bail, absent "any good faith belief that [he] would not present himself in court when directed as he was never a flight risk," knowing he could never post the sum "as they had just depleted all his bank accounts."

Bovery contends the combination of the first-degree charge and the exorbitant bail devastated his ability to obtain work and wrongfully delayed his entry into the pre-trial intervention program. Bovery claims defendant Matthews "later admitted to Bovery's criminal counsel that the new charges were unfounded and were intended to send Bovery a message as, in their opinion, he was not taking the legal matter serious[ly] enough." Bovery's

motion to dismiss the indictment was denied in February 2012. Amboy I, 447 N.J. Super. at 153 n.6.

In April 2016, Bovery entered a negotiated guilty plea to an amended charge of third-degree possession of gambling records, N.J.S.A. 2C:37-3, with a civil reservation and was admitted into PTI. Amboy II, No. A-0487-17 (slip op. at 6). Bovery successfully completed PTI in November 2016, and the criminal charge against him was dismissed. Ibid. We had by then affirmed the forfeiture. Bovery continued his attack on the forfeiture by filing a motion to reopen the judgment.

While Bovery's appeal of the denial of that motion was pending in this court, he filed this action in the Law Division against Monmouth County, the Monmouth County Prosecutor's Office and the State of New Jersey. All moved to dismiss the complaint. Monmouth County argued it could not be liable to Bovery as it had no role in his arrest or prosecution, see Cashen v. Spann, 66 N.J. 541, 552 (1975), and noted the prosecutor's office was being defended and indemnified by the State in accordance with Wright v. State, 169 N.J. 422, 455 (2001). The prosecutor's office and the State argued they were entitled to dismissal because they are not "persons" for purposes of the Civil Rights Act and that Bovery could not establish that the criminal charges

against him were favorably terminated. Bovery dismissed the County, but opposed the motion by the State and the prosecutor's office. At argument on the motion, counsel for Bovery contended that whether the criminal matter was resolved favorably to him was a question of fact, and if the court agreed that the State and the prosecutor's office were not persons amendable to suit, that he should be permitted to amend his complaint to name an individual prosecutor.

The judge hearing the motion determined, somewhat contradictorily, that "Bovery had sufficiently pled facts to support his various causes of action" and that "[f]urther amendment rather than dismissal would be warranted." Because, however, the court found Bovery "improperly sought further amendment as no formal motion was filed," the judge dismissed the complaint without prejudice "only for the purpose of allowing a filing complaint to cure and plead any additional facts to support the claim[s]."

Bovery filed an amended complaint repleading the same causes of action for violations of the Civil Rights Act, negligent supervision, malicious prosecution, abuse of process, and intentional infliction of emotional distress, only leaving out Monmouth County and adding the individual defendants. Following the filing of the amended complaint, the case was assigned to a

different judge. Defendants moved to dismiss the complaint on the same grounds, adding that the individual prosecutors were entitled to immunity. Bovery claimed that the State's arguments were already rejected by the first judge to hear the matter and that there was "no basis" to revisit those decisions.

In a thoughtful and comprehensive opinion from the bench, Judge McCarthy granted defendants' motion to dismiss the complaint. The judge began his analysis by rejecting Bovery's claim that law of the case precluded the grant of the motion. Judge McCarthy noted the doctrine was a non-binding rule intended to prevent re-litigation of an issue already decided. See Lombardi v. Masso, 207 N.J. 517, 538 (2011). Noting the doctrine's hallmark is its discretionary nature, requiring the deciding judge to balance respect for the rulings of a coordinate judge against those factors bearing on the pursuit of justice, Hart v. City of Jersey City, 308 N.J. Super. 487, 498 (App. Div. 1998), Judge McCarthy found the doctrine "not . . . an insurmountable barrier" here.

Considering the facts of the amended complaint in the light most favorable to Bovery in determining whether they "suggested" a cause of action, Printing-Mart Morristown v. Sharp Elec. Corp., 116 N.J. 739, 746 (1989), Judge McCarthy noted the prior judge had analyzed the complaint without reference to our opinion in Amboy I, which Judge McCarthy recognized was

controlling in several respects. Specifically, the judge noted that all of Bovery's tort claims, the claims for negligent supervision, malicious prosecution, abuse of process and the intentional infliction of emotional distress, were premised on the same underlying fact — that the decision to prosecute him for first-degree money laundering was done out of malice. And, thus, if the decision to prosecute Bovery fell within the protection of the statutorily-provided immunity, N.J.S.A. 59:3-8, those claims would necessarily fall.

The judge noted that Bovery repeatedly alleged throughout his amended complaint that the prosecutors were motivated by actual malice in bringing the first-degree money-laundering charge, asserting "that the conduct of the individual and institutional defendants was unreasonable, draconian, a cash grab, malicious, improper and an overall perverted use of the legal procedure done to intimidate and harass the plaintiff for the sole purpose of obtaining an improper collateral advantage" in the forfeiture action. Acknowledging the teaching of the United States Supreme Court that "bare allegations of malice should not suffice to subject government officials either to the costs of trial or to the burdens of broad-reaching discovery," Harlow v. Fitzgerald, 457 U.S. 800, 817-18 (1982), the judge found that instruction particularly relevant here

8

in that we had already determined the forfeiture was not an illegal "cash grab," based on the direct causal connection between the money seized and the promotion of gambling, which, because of the size of Bovery's operation, constituted an indictable, third-degree offense under N.J.S.A. 2C:37-2, see Amboy I, 447 N.J. Super. at 159-62.

The judge found Bovery's arguments that the prosecutors were motivated by actual malice and willful misconduct under N.J.S.A. 59:3-14, which would remove their actions from the immunity accorded prosecutors in New Jersey under N.J.S.A. 59:3-8, ignored our prior ruling that his funds were properly seized based on his own illegal conduct, and also that the criminal charges against him were only dismissed after he successfully completed PTI. The judge found Bovery's "unsupported arguments" of the prosecutors' actual malice and willful misconduct were speculative and insufficient to satisfy his burden to plead sufficient facts to put the prosecutors' immunity under N.J.S.A. 59:3-8 in issue under Van Engelen v. O'Leary, 323 N.J. Super. 141, 144 (App. Div. 1999). The judge accordingly dismissed Bovery's claims for negligent supervision, malicious prosecution, abuse of process, and intentional infliction of emotional distress.

The judge also noted that Bovery's argument that the prosecutors acted with actual malice negated the liability of the State and the prosecutor's office for negligent supervision under N.J.S.A. 59:2-10, as that statute provides that public entities are not liable for the acts of their employees constituting fraud, actual malice, or willful misconduct. See Bernstein v. State, 411 N.J. Super. 316, 332 (App. Div. 2010). Judge McCarthy further found Bovery's guilty plea to a reduced charge and entry into PTI precluded a finding that the criminal proceedings terminated favorably to him, dooming his malicious prosecution claim. See LoBiondo v. Schwartz, 199 N.J. 62, 90 (2009).

Turning to Bovery's claims against the individual defendants under the Civil Rights Act, the judge found the prosecutors were entitled to absolute immunity for their decision to pursue the first-degree money laundering charge, following federal precedent established under 42 U.S.C. § 1983. See Perez v. Zagami, LLC, 218 N.J. 202, 213 (2014) (noting the statute's "purpose as a state law analogue to Section 1983"); Loigman v. Twp. Comm. of Middletown, 185 N.J. 566, 581 (2006) (explaining the absolute immunity of prosecutors under section 1983). The judge determined both the prosecutor's office and the State were not "persons" for purposes of section 1983 or our Civil Rights Act, see Will v. Mich. Dep't of State Police, 491 U.S. 58, 64

(1989), and therefore entitled to sovereign immunity against plaintiff's civil rights claims under the Civil Rights Act, see Endl v. New Jersey, 5 F. Supp. 3d 689, 697 (D.N.J. 2014). The judge further found that Bovery's claims were precluded under the authority of Heck v. Humphrey, 512 U.S. 477, 486 (1994), which holds "the hoary principle that civil tort actions are not appropriate vehicles for challenging the validity of outstanding criminal judgments applies to § 1983 damages actions" requiring a plaintiff prove the unlawfulness of his conviction or confinement, "just as it has always applied to actions for malicious prosecution."

Finally, Judge McCarthy determined that Bovery didn't have a right to further discovery to establish a basis for his claims. The judge noted established law for the proposition that the right to discovery is not absolute in cases involving immunity statutes, see Hurwitz v. AHS Hosp. Corp., 438 N.J. Super. 269, 277-78 (App. Div. 2014). The judge found "no indication here that additional discovery will have any effect on the immunity" afforded the individual prosecutors or the public entity defendants.

Bovery appeals, reprising his arguments to the trial court, specifically, that the court erred in failing to follow the first judge's rulings in the case; that the individual defendants are not entitled to immunity from the common law

11

tort claims pleaded in the amended complaint under the Tort Claims Act, and are not entitled to absolute immunity under the Civil Rights Act; that the State and the prosecutor's office are "persons" under the Civil Rights Act; that the trial court should not have dismissed claims under Heck v. Humphrey where the money-laundering charges terminated favorably for Bovery, and specifically erred in dismissing the malicious prosecution claim in light of the favorable termination; and in denying him the opportunity to amend his complaint or take discovery related to the malice of the individual actors. We reject all of those arguments and affirm, essentially for the reasons expressed by Judge McCarthy in his thorough opinion from the bench. We add only the following.

Bovery's premier argument that Judge McCarthy was barred by the law of the case from considering defendants' motion to dismiss ignores that the order relied on dismissed the action without prejudice. A dismissal without prejudice adjudicates nothing. Malhame v. Demarest, 174 N.J. Super. 28, 30 (App. Div. 1980); Pressler & Verniero, Current N.J. Court Rules, cmt. 1.2 on R. 4:37-1 (2020). It certainly did not bar Judge McCarthy from considering defendants' motion to dismiss the amended complaint.

We are satisfied the trial court correctly determined that neither the State nor the prosecutor's office are "persons" subject to suit under the Civil Rights Act. See Brown v. State, 442 N.J. Super. 406, 425-26 (App. Div. 2015), rev'd on other grounds, 230 N.J. 84 (2017) (concluding the State is immune from a suit for damages under the Civil Rights Act "[g]iven that the Legislature did not choose to include an express waiver of sovereign immunity in the Civil Rights Act and that the State enjoys immunity under the analogous § 1983"). Given the similarity between the Civil Rights Act and section 1983, on which our Act was modeled, our courts apply section 1983 immunity doctrines to claims arising under the Civil Rights Act. See e.g., Gormley v. Wood–El, 218 N.J. 72, 113 (2014). Thus, we are likewise satisfied that the trial court correctly determined that the individual defendants are entitled to absolute immunity from Bovery's claims that they wrongly instituted and pursued the first-degree money laundering charge under the Civil Rights Act. See Imbler v. Pachtman, 424 U.S. 409, 431 (1976) (holding "that in initiating a prosecution and in presenting the State's case, the prosecutor is immune from a civil suit for damages under § 1983").

The court's qualified immunity analysis under the Tort Claims Act is also sound. As the trial court correctly noted, Bovery's tort claims are all

premised on his single assertion that the prosecutors instituted the money laundering charge in order to pressure him into not contesting the forfeiture action. He fails to note, however, that an independent grand jury determined there was probable cause for bringing the charge, see State v. Shaw, 241 N.J. 223 (2020), and his motion to dismiss the indictment was denied, meaning a Criminal Division judge determined the indictment was neither manifestly deficient nor palpably defective, and that the prosecutor's conduct did not improperly influence the grand jury's determination, see State v. Bell, 241 N.J. 552 (2020).

Bovery also fails to acknowledge how broad the money laundering statute is; "[i]t punishes any possession of property known to be derived from criminal activity." State v. Harris, 373 N.J. Super. 253, 265 (App. Div. 2004) (quoting Cannel, New Jersey Criminal Code Annotated, cmt. on N.J.S.A 2C:21-23 (2004)). We held in Harris that "[a]n independent predicate offense is not necessary to the prosecution of the promotion prong of New Jersey's money laundering statute. Proceeds of a criminal activity may be derived from an already completed offense or a completed phase of an ongoing offense." Harris, 373 N.J. Super. at 267. Accordingly, Bovery's claim that the money laundering charge was "bogus" is simply wrong based on his illegal conduct in

facilitating the sports pools. See Amboy I, 447 N.J. Super. at 158-62 (describing operation of the pools).

We also agree with the trial judge that Bovery's claim that the prosecutors instituted and pressed the money laundering charge to pressure him into capitulating to the forfeiture is conclusory and based entirely on speculation and hearsay. Further, Bovery's premise is faulty. The prosecutors did not need his capitulation to succeed on the forfeiture. They secured summary judgment on an undisputed record. We agree with the trial judge that Bovery's "bare allegations of malice should not suffice to subject government officials either to the costs of trial or to the burdens of broad-reaching discovery." Harlow, 457 U.S. at 817-18. Even viewing the allegations of the amended complaint in the most favorable light, they were plainly insufficient to properly aver that the actions of the individual defendants constituted actual fraud, actual malice or willful misconduct such as to abrogate defendants' statutorily-granted immunity under N.J.S.A. 59:3-8.

Finally, we note our agreement with the trial judge's decision that entry into PTI is not a favorable termination of criminal proceedings sufficient to support a claim for malicious prosecution. See Rubin v. Nowak, 248 N.J. Super. 80, 83 (App. Div. 1991); see also Matter of Gauthier, 461 N.J. Super.

507, 515 (App. Div. 2019). As Bovery has not raised any argument not already considered and rejected by the trial judge, we are satisfied Judge McCarthy appropriately exercised his discretion in finding there were "no reasonable indicia that a factual basis to surmount the immunities [would] be uncovered," and that dismissing the amended complaint with prejudice was warranted. See Hurwitz, 438 N.J. Super. at 278.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-2940-18T3